# Pyroleum Appliance Company *v.* Williamsport Hardware and Stove Co., Limited, Appellant.

*Contract—Evidence—Parol evidence—Partnership.*

In an action against a partnership upon a written contract the testimony of two of the partners that the defendants were induced to execute the contract by false representations made by the agent of the plaintiff as to the quality and the successful operation of the articles purchased, is sufficient to set aside the contract on the ground of fraud.

Where the defendants are not attempting to alter the written contract by parol, but to avoid it on account of the falsity of the representations which induced the execution of it, neither the fact that the witnesses are members of said firm nor that they are joint parties having a community of interest, suffices to establish their legal identity as one person, within the meaning of the rule that a written instrument cannot be changed or reformed except by the testimony of two witnesses or of one witness and corroborating circumstances equivalent to another witness.

*Evidence—Parol evidence—Contract.*

In an action upon a written contract where the defendant claims that he was induced to sign the contract by the fraud and misrepresentations of the plaintiff, a witness is competent to testify to declarations made by plaintiff prior to the execution of the contract, although the witness states that he did not recollect the date of the contract, and that he was not present when it was signed, but other evidence in the case shows that the declarations testified to by the witness were repeatedly made, up to, and at the very time that the contract was signed.

Argued March 21, 1895. Appeal, No. 1, Jan. T., 1895, by defendant, from judgment of C. P. Lycoming Co., June T., 1894, No. 51, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Reversed.

Assumpsit on a contract in writing. Before METZGER, P. J.

At the trial it appeared that plaintiff claimed to recover for burners sold and delivered to defendant under a contract in writing, dated August 24, 1893. The contract was executed by J. H. Linck, chairman of the defendant company. Defendant claimed that the representations of William Grauer, plaintiff's agent, were the inducement for signing the contract, and that these representations were false. Linck testified to the declarations of Grauer, and his testimony was supported by that of George Ketchum, another member of the company

defendant. The evidence relating to the alleged fraudulent declarations is quoted at length in the opinion of the Supreme Court.

The court charged in part as follows:

"It is now for you to determine whether the defendant has offered a sufficient amount of proof here to satisfy you clearly, distinctly and indubitably that this contract was executed by Mr. Linck on the 24th day of August, 1893, by reason of fraudulent misrepresentations made to him at that time. His own evidence would not be sufficient, as I have already stated. It is denied on the part of the agent himself, who is the party who is alleged to have perpetrated the fraud and made the misstatements. [Now is there other evidence in this case sufficient to satisfy you that the other circumstances proven are equal to another witness? I would say right here, that there has not been any witness introduced that knows anything about these representations that were made at or about that time except the parties to this instrument. There is no direct testimony except the testimony of the parties, because, although Mr. Ketchum testified that certain statements were made to him by the agent, he does not testify that he was present at the time of the making of the contract, and he also testifies that he is a member of the firm of the defendant, and hence he is also a party in that sense.

"Now, what further circumstances are there? Gentlemen, it is for you to determine whether there would be any such as would be equal to another witness. If there are none you must find a verdict for the plaintiff in this case, because the contract is the law of the parties, unless the defendant has by the other proof required by the law made out a case of fraud.] " [1]

Plaintiff's points were among others as follows:

"3. That any representations made by William Grauer previous to the day of the signing of the contract of August 24, 1893, cannot operate as an inducement to the signing of the contract by Linck. *Answer:* This is affirmed unless these representations were reiterated at the time of the signing of the contract. If representations were previously made and they were continued to be made up to the time of the signing of the contract they would operate; otherwise, not." [2]

" 4. That there is no implied warranty in the contract of August 24, 1893, that the burners would do certain work, would consume a certain quantity of oil, or would work successfully. *Answer :* We affirm that point. There is no such warranty in the contract." [3]

Verdict and judgment for plaintiff for $561.70. Defendant appealed.

*Errors assigned,* among others, were, (1–3) above instructions, quoting them.

*John G. Reading, Jr.,* and *B. S. Bentley,* for appellant.—The representations of plaintiff's agent constituted such an implied warranty as upon the failure thereof to vitiate the contract and prevent a recovery : Addison on Torts, ed. 1878, vol. 2, p. 418; Benjamin on Sales, ed. 1889, vol. 2, p. 865 ; Bigler v. Flickinger, 55 Pa. 279.

It was error for the court to instruct the jury that because two of the defendant's witnesses were stockholders and members of the defendant company their testimony was but the testimony of one witness : Vandegrift v. Herbert, 18 N. J. Eq. 466 ; Honesdale Glass Co. v. Storms, 125 Pa. 268.

It is the province of the court to pass upon the competency of a witness and of the jury upon the credibility : Shaffer v. Clark, 90 Pa. 94.

*T. M. B. Hicks* and *Seth T. McCormick, Henry C. McCormick* with them, for appellee.—The written contract of Aug. 24, 1893, carried no implied warranty as to the successful working of the articles sold: Port Carbon Iron Co. v. Groves, 68 Pa. 149; Lord v. Grow, 39 Pa. 88 ; Jarecki Mfg. Co. v. Kerr, 165 Pa. 529; Egan v. Call, 34 Pa. 236 ; Whitaker v. Eastwick, 75 Pa. 229 ; Fraley v. Bispham, 10 Pa. 320 ; Shisler v. Baxter, 109 Pa. 443.

The court would have been justified in instructing the jury to absolutely disregard the testimony of George W. Ketchum, one of the defendant company, because it was an admitted fact that Ketchum was not present at the time of the execution of the contract in suit and because he was a partner of the defendant company : Walker v. France, 112 Pa. 203; Thomas v. Loose, 114 Pa. 35.

OPINION BY MR. JUSTICE GREEN, July 18, 1895:

While it is true that the testimony of George Ketchum was not formally excluded from the consideration of the jury, it seems to us that the comments of the learned judge of the court below, complained of in the first assignment of error, and in the immediate context of the charge, imply that his testimony was not to be considered as the testimony of another witness than Linck who signed the contract. We think the jury would be led to infer that they could only regard the evidence as containing the testimony of one witness directly and of concurring circumstances, and not as containing the testimony of two witnesses, to the alleged misrepresentations. We think this view is distinctly put in the words, "Now what further circumstances are there? Gentlemen, it is for you to determine whether there would be any such as would be equal to another witness. If there are none you must find a verdict for the plaintiff in this case, because the contract is the law of the parties, unless the defendant has by the other proof required by the law made out a case of fraud." The court had previously said, speaking of the testimony of Linck, "His own evidence would not be sufficient as I have already stated." The learned judge then said, "Now is there other evidence in this case sufficient to satisfy you that the other circumstances proven are equal to another witness?" Speaking of Mr. Ketchum he said he was not present at the time of the making of the contract and he was, "a member of the firm of the defendant and therefore a party in that sense."

The whole tenor of the charge upon this subject, it seems to us, conveys the idea that the combined testimony of Linck and Ketchum is to be regarded as the testimony of one witness only, and that there must be other testimony of corroborating circumstances in order to satisfy the rule which requires the testimony of two witnesses, or one witness and corroborating circumstances, to overcome the effect of a written contract as it appears on its face.

If such was the meaning of the learned court we are unable to concur in it. Two persons having a common interest in the subject-matter of a litigation do not lose their individuality on that account. They are two separate and distinct persons nevertheless. Their interest as parties in the suit does not dis-

qualify them under the modern law of evidence, and neither the fact that they are members of the same firm, or that they are joint parties having a community of interest suffices to establish a legal identity as one person. We therefore hold that where two persons, so associated, testify in a cause, their testimony is to be treated as that of two different persons.

Another reason mentioned in the charge for disregarding the testimony of Ketchum was, that he was not present at the time of the signing of the instrument by Linck. It is true Ketchum says he did not "see the contract signed," but it does not follow that he was disqualified from testifying to the declarations of Grauer, the plaintiff's agent, from the time they were first made down to the time of the making of the contract. This the court admitted, and stated, in the answer to the plaintiff's third point, and the question how closely the making of these declarations related to the fact of the execution of the contract was one to be determined upon a careful consideration of all the testimony, and this, of course, was for the jury. Having stated his knowledge of Grauer and the fact of having conversations with him in reference to the burner in question, he was asked: " Q. What representations did he make to you at that time, and thence down to the time of the making of this contract on the 24th of August in reference to this burner? By the Court: Were you there the day the contract was made? A. I cannot swear to that, I didn't see the contract signed. I knew there was a contract made there or a paper as I understood from Mr. Linck which was to be submitted. By Mr. McCormick: Objected to. A. (Continued.) That is all I know about it. Then that was told over to me in that way. Q. Do you know the time that this contract was made? A. No, sir. Q. Do you know now when this contract was made? A. No, sir. Q. Well it has been stated a dozen times it was the 24th day of August? A. I say I don't know anything about when it was made. I can tell what some of them said."

Now all of this was nothing more than a statement by the witness that he did not know the date of the written contract, but it does not at all disprove the fact that the representations he was about to disclose were made, or might have been made, up to, and on, the very day the contract was made. That would depend upon other circumstances. He was again asked: " Q. Give the

conversation that you had with Mr. Grauer in the presence of
Mr. Linck commencing the latter part of July and thence on?
A. Well, I can't tell the time, that is, what I can remember.
I have too much on my mind to remember the date. . . . Mr.
Grauer was there probably fifteen or twenty times and I can't
pick out one special time and tell what the conversation was
between him and I.   Q. I want to know what conversation you
had with him in the presence of Mr. Linck in reference to this
transaction?   A. The last time was when he told us he was
around to see the burners and they were all satisfactory, and
they were working well.   Q. What did he ever say to you in
the presence of Mr. Linck as to what the burners would do?
A. Told us the burners were equal to natural gas or even supe-
rior, and that they would burn from a pint to a pint and a half of
oil per hour; and use the very cheapest oil, 110 if we could get it,
because there was more gas on it.   We could not get it so we
got 120 and we found out by experiment that it burned about
three times—very near—about three times as much.

The witness then proceeded at much length to tell how they
subsequently learned from the complaints of persons who had
taken the burners, and from personal inspection, that the burn-
ers did not do what was promised of them, and that they had
to take them out after incurring much expense.

Now the witness Linck, who was chairman of the defendant
company and signed the contract as such on behalf of the com-
pany, had been previously examined.   He testified that he first
knew Grauer, who called to see him about the burners, about
the last of July or first of August.   He testified at much length
to the conversations between Grauer and himself prior to the
execution of the contract, and to the representations made to
him by Grauer as to the qualities of the burners and what they
would do, and how much they would burn, and also that four
test burners were to be put in and burnt till they were satisfac-
tory, and if they were satisfactory then, they, the defendant
company, would be willing to take the risk of them.   Finally
he was asked: "Q. Will you state what took place then and
what was stated to you by Mr. Grauer at the time you signed
this contract?   A. He just came in; he was around to the par-
ties using those burners, and he said they were all satisfactory,
they were well pleased with them.   I said if that was the case
I was satisfied."

Ketchum testified that he was present with Linck and Grauer when Grauer told them he had been around to see the burners and they were satisfactory. This is what he said: "The last time was when he told us he was around to see the burners and they were all satisfactory and they were working well." Linck testified that he signed the contract at the time Grauer told him this same thing, and as there is no other testimony that such conversation took place at any other time, it is as near as may be a certainty, that both Linck and Ketchum were present and the contract was then signed. Neither Linck nor Ketchum recollects the presence of the other, when the contract was signed, but both recollect the occurrence of the same fact which transpired at the time of signing the contract. As a matter of course it was entirely for the jury to say whether both were present at that time.

Now there was plenty of other testimony in the case that the statement made by Grauer about the burners being satisfactory and working well was false. And no one can consider the testimony of Linck on this very subject without reaching the conclusion that he was induced to sign the contract on the faith of that statement. It came out in a perfectly natural but very convincing way, and while it proved his lack of wisdom in relying solely upon the statement of Grauer for the truth of the fact, it also proved his innocence of any subsequently conceived plan of escaping liability by any concocted and untruthful story.

We think that a too narrow view was taken of the case both by counsel and the learned court below. It was treated almost entirely, as a case of altering a written contract by parol. While it does have that aspect to a certain extent, its more important aspect is the obtaining of a contract by means of false representations. In this point of view it is the falsity of the representations, rather than the omission of a term of the contract that avoids it. But both these elements are present here. The falsity of the original representations as to the qualities of the burner, and especially the falsity of the ultimate statement that the burners were satisfactory to the parties using them, are sufficient of themselves, if believed by the jury, and if they induced the signing of the contract, to set it aside on the ground of fraud.

It is doubtful whether the alleged omitted term of the contract was sufficiently proved to justify the reformation of the instrument, as Ketchum gives no testimony on that subject, but on the question of fraud we think the evidence was entirely sufficient and that Ketchum's testimony should have the same effect as that of any other witness.

Judgment reversed and new venire awarded.